UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LEROY J BLAZE JR** | **CASE NO. 6:16-CV-01552** |
| **VERSUS** | **MAGISTRATE JUDGE HANNA** |
| **MCMORAN OIL & GAS LLC ET AL** | **BY CONSENT OF THE PARTIES** |

## MEMORANDUM RULING

Currently pending is the motion for summary judgment [Rec. Doc. 147], which was filed by the defendant, Danos, LLC ("Danos"), seeking dismissal of all claims brought against it by the plaintiff, Leroy J. Blaze, Jr., given that the claims sound in negligence, yet Danos owed no duty to protect the plaintiff from a hazard it did not create and over which it had no control. The motion is unopposed. [Rec. Docs. 148, 152, 153, and 154]. For the reasons fully explained below, the motion [Rec. Doc. 147] is GRANTED and the plaintiff's claims against Danos are hereby DISMISSED WITH PREJUDICE.

### BACKGROUND[1]

This case arises out of an incident which occurred on December 13, 2015, at approximately 9:05 p.m., on a fixed oil and gas production platform, known as South

---

[1] Given the lack of opposition to the instant motion, Danos' statement of uncontested facts [Rec. Doc. 147-2] has been adopted herein, as those facts have been deemed admitted for purposes of this motion. [*See* Local Rules 56.1 and 56.2]. Where the facts are drawn directly therefrom, no further citation is noted herein.

Marsh Island 141-A ("the platform"), situated off the coast of Louisiana on the Outer Continental Shelf. At the time of the incident, the plaintiff was working the night shift during adverse weather conditions, including "driving rain, strong winds, and heavy seas."[2] Due to the weather conditions, the platform's crane, which would typically be used during the relevant operations, had been shut down earlier in the day and a revised procedure was put into place.[3] The plaintiff, who had approximately 15 years of offshore work experience, alleges that he was injured while manually handling a pup joint in an elevated work basket above the deck of the platform.

On December 13, 2015, named defendant McMoRan Oil & Gas, LLC ("McMoRan") was the owner and/or operator of the platform. Prior to the incident, McMoRan hired various independent contractors to furnish personnel, equipment, and/or materials for plug and abandonment ("P&A") operations on various wells located on the platform.[4] The P&A operations were conducted 24 hours a day, with one 12-hour day shift and one 12-hour night shift. At the time of the incident, the

---

[2] *See, e.g.*, Rec. Doc. 1, p. 7, ¶ 24.
[3] Rec. Doc. 147-1, p. 8. As explained below, Danos was not involved in either the substance of the revised procedure or the decision to implement same. *See also*, Rec. Doc. 147-10, p. 2 (Behavioral Job Safety & Environmental Analysis, indicating the revised procedure used).
[4] As a result of McMoRan's various agreements with independent contractors, at the time of the incident, there were 23 personnel and/or workers on board the platform. Rec. Doc. 147-2, p. 1, ¶ 3. McMoRan had separate contracts with each of these companies providing personnel and/or equipment/materials, pursuant to which each was designated as an independent contractor. Rec. Doc. 147-1, p. 7.

plaintiff worked as an E-line operator, employed by Superior Energy Services, LLC ("Superior"), one of the independent contractors hired by McMoRan, pursuant to a Master Service Contract ("MSC"), to furnish personnel, equipment, and/or materials for the P&A operations. Superior furnished a five- or six-man crew for the day and night shifts and also furnished its own employee-supervisor to oversee its workers and the performance of its work on the P&A job.

Pursuant to a separate MSC, Danos agreed to provide contract production and/or skilled labor operators to McMoRan to assist with operating certain McMoRan-owned and/or operated oil and gas production facilities, including the platform. Danos did not own or have legal custody of the platform, nor did Danos own or have custody of the workbasket or any of the equipment that the plaintiff was handling at the time of the incident. Danos had no contractual relationship with the plaintiff or his employer, Superior, nor did Danos hire or train the plaintiff. Danos did not provide or pay for any of the services, equipment and/or materials for the P&A work performed on the platform.

At the time of the incident, Danos had only one production operator, Erick Huntsberry ("Huntsberry"), on the platform. Huntsberry worked a 12-hour hitch, from 6:00 a.m. to 6:00 p.m., such that he was in his quarters at the time of the incident, which occurred at 9:05 p.m.[5] As a production operator, Huntsberry had no

---

[5] Rec. Doc. 147-1, pp. 7-8 (citing Rec. Doc. 147-6, p. 2, ¶ 9).

specialization, knowledge, prior work experience or training to perform P&A work. Neither Danos nor Huntsberry exercised any supervision, oversight, or operational control over plaintiff's work activities or over any of the tasks he performed. Neither Danos nor Huntsberry directed the plaintiff's activities on the platform during the P&A work nor did they make the decision to have the plaintiff or his co-worker manually handle the pup joint in the work basket during the prevailing weather conditions. Neither Danos nor Huntsberry were in charge of or had ultimate work authority over the P&A work being performed on the platform, and there is no evidence that Danos or Huntsberry knew or should have known about any alleged unsafe work condition on the evening of December 13, 2015.[6]

The plaintiff's claims arise under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333, *et seq.*, and Louisiana law, alleging negligence on the part of Danos and the other defendants.[7] Danos, which was added as a named defendant by the plaintiff's fifth supplemental and amended complaint filed on January 3, 2018, now seeks summary judgment and complete dismissal of all claims against it.[8] Danos argues that it owed no duty to the plaintiff to protect him from a

---

[6] It is further undisputed that no one complained to Danos or Huntsberry about any unsafe work condition prior to the plaintiff's incident on December 13, 2015.
[7] *See* Rec. Docs. 1, p. 15, ¶¶ 42, 43; and 119.
[8] *See* Rec. Doc. 119.

hazard it did not create and over which it had no control. As noted above, the motion is unopposed.

## ANALYSIS

### A. THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[9] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[10]

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[11] The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[12] If the moving party carries its initial burden, the burden shifts to the

---

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).
[10] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252); *Hamilton*, 232 F.3d at 477.
[11] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[12] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 323).

nonmoving party to demonstrate the existence of a genuine issue of a material fact.[13] All facts and inferences are construed in the light most favorable to the nonmoving party.[14]

A motion for summary judgment "cannot be granted simply because there is no opposition."[15] When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the motion and grant summary judgment when a prima facie showing for entitlement to judgment is made.[16]

**B.    THE APPLICABLE LAW**

It is undisputed that the plaintiff's alleged injuries occurred on a fixed platform, located in federal waters on the Outer Continental Shelf and thus, this Court has jurisdiction pursuant to the OCSLA.[17] Although federal law generally applies to such disputes, when there are "gaps in the federal law," the law of the adjacent state is adopted and applied as surrogate federal law "[t]o the extent that [the adjacent state's law is] applicable and not inconsistent with [the OCSLA] or

---

[13] *Washburn*, 504 F.3d at 508.
[14] *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).
[15] *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995); *see also Calais v. Theriot*, 589 F. App'x 310, 311 (5th Cir. 2015) (per curiam).
[16] *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).
[17] *See* 43 U.S.C. §§ 1333(a)(1) ("The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf[.]"); 1349(b) ("[T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with ... any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals ... or which involves rights to such minerals[.]").

with other Federal laws and regulations."[18] Accordingly, Louisiana law applies, a finding which is likewise not in dispute.

Louisiana law provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[19] "Louisiana employs a 'duty-risk analysis' to determine whether to impose liability."[20] Under this analysis, it is the plaintiff's burden to prove the following five elements:

> first, that the defendant had a duty to conform his conduct to a specific standard (duty); second, that the defendant's conduct failed to conform to the appropriate standard (breach); third, that the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause in fact); fourth, that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (legal cause); and fifth, that the plaintiff suffered actual damages (damages).[21]

"Whether the defendant owes a duty is a threshold question and is a question of law."[22]

The Fifth Circuit "has acknowledged that independent contractors owe each other 'the duty to refrain from gross, willful or wanton negligence, and . . . from

---

[18] *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 738 (5th Cir. 2016). Danos correctly notes that maritime law does not apply of its own force, here. *See Thibodeaux v. Grasso Prod. Mgmt., Inc.*, 370 F.3d 486, 493 (5th Cir. 2004) ("Both this court and the Supreme Court have expressed the opinion that work commonly performed on oil production platforms is not maritime in nature." (citing *Herb's Welding Inc. v. Gray*, 470 U.S. 414, 423–24 (1985))).
[19] La. Civ. Code art. 2315(A).
[20] *Fornah v. Schlumberger Technology Corporation*, ___ F. App'x ___, 2018 WL 2715147, at *3 (5th Cir. 2018) (citing *Duncan v. Wal-Mart La., LLC*, 863 F.3d 406, 409 (5th Cir. 2017) and *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06); 923 So.2d 627, 632–33).
[21] *Fornah*, 2018 WL 2715147, at *3-4 (quoting *Duncan*, 863 F.3d at 409).
[22] *Fornah*, 2018 WL 2715147, at *4 (quoting *McCarroll v. Wood Grp. Mgmt. Servs., Inc.*, 561 F. App'x. 407, 410 (5th Cir. 2014)).

creating an unreasonable risk of harm or a hazardous condition.'"[23] "Independent contractors do not generally owe a duty to protect the employee of another independent contractor beyond the exercise of ordinary care that is owed to the public generally."[24] The Fifth Circuit "has also recognized that, in determining whether one independent contractor owes a duty to another independent contractor's employee, relevant considerations are whether one independent contractor employs, shares a contract with, or supervises the other's employee."[25]

### C. DANOS IS ENTITLED TO SUMMARY JUDGMENT

As explained, both Danos and Superior were independent contractors of McMoRan, and each company was party to its own MSC with McMoRan; Danos and Superior did not have a contractual relationship with each other. Furthermore, while Superior was hired to furnish personnel, equipment, and/or materials for the P&A operations, Danos was not hired to provide any services to McMoRan in connection with the actual P&A work. In fact, Danos neither provided nor paid for any of the goods, supplies, equipment or materials for any P&A work being performed at the time of the incident, and Danos did not oversee, supervise or train the plaintiff or any other Superior employee. Instead, Superior furnished its own

---

[23] *Fornah*, 2018 WL 2715147, at *4 (quoting *McCarroll*, 561 F. App'x. at 410 (citing *Lafont v. Chevron, U.S.A.*, 593 So.2d 416, 420 (La. App. 1st Cir. 1991))).
[24] *Id.*
[25] *Id.*

employee-supervisor to oversee its workers, including the plaintiff, and the performance of its work on the P&A job, and there is no evidence that Superior ever transferred control over its employees to Danos. Danos' sole employee on the platform, Huntsberry, was in his quarters at the time of the incident, and the plaintiff testified that Huntsberry never gave him any instructions, directions, or materials.[26]

Applying the above-cited law, Danos correctly argues that it had no duty to protect the plaintiff, as an employee of Superior, beyond the exercise of ordinary care that is owed to the public generally.[27] Danos did not have an employment or contractual relationship with the plaintiff or his employer, Superior. Danos likewise had not assumed supervisory responsibility for the plaintiff at the time of the incident, nor is there any evidence that Danos supervised Superior any employees at any time. Moreover, there is no evidence that Danos or Huntsberry knew or should have known of any unsafe work conditions on the evening of December 13, 2015. And, finally, no Danos employee was in the relevant area at the time of, or otherwise involved in any relevant events leading up to, the plaintiff's injury-causing incident. Accordingly, neither Danos nor Huntsberry caused or contributed to the injury-causing incident, and Danos is entitled to judgment as a matter of law.

---

[26] Rec. Doc. 147-1, p. 14 (citing Rec. Doc. 147-5, pp. 7-8). In fact, the plaintiff testified that he never even saw Huntsberry. Rec. Doc. 147-5, pp. 6-8.
[27] *Fornah*, 2018 WL 2715147, at *4; *McCarroll*, 561 F. App'x. at 410.

## Conclusion

For the foregoing reasons, Danos, LLC's motion for summary judgment (Rec. Doc. 147) is hereby GRANTED, and the plaintiff's claims against Danos are hereby DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana on this 10th day of October, 2018.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE